UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 23-cr-10130-IT |
| LITANG LIANG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO
THE DEFENDANT'S MOTION TO DISMISS**

On May 4, 2023, the Defendant was indicted by a grand jury on two counts: (1) conspiracy to act as an agent of a foreign government; and (2) acting as an agent of a foreign government without notice to the Attorney General. According to the Indictment, from in or around 2018 through at least 2022, the Defendant conspired to act and did act within the United States as an agent of the People's Republic of China ("PRC") government by providing PRC government officials with information on Boston-area individuals and organizations; organizing a counter-protest against pro-democracy dissidents; providing photographs of and information about dissidents to PRC government officials; and providing the names of potential local recruits to the PRC's Ministry of Public Security ("MPS"), an agency that is responsible for investigating political dissidents. *See generally* Indictment, Dkt. No. 1. The Indictment also lays out the evidence indicating that the Defendant performed these acts pursuant to the direction or control of PRC government officials.

On May 7, 2024, the Defendant filed a Motion to Dismiss the Indictment, which was supported by a Memorandum of Law ("Def. Mot."). *See* Dkt. Nos. 58, 59. The Defendant argues that neither of the counts are sufficiently alleged in the indictment, that the charges violate his

1

First Amendment rights, and that Section 951 is unconstitutional as applied to him. None of these arguments hold water. The lengthy, twenty-page Indictment lays out more than sufficient facts to survive a motion to dismiss on both counts. It describes how the Defendant's *conduct*, not his speech, underlies those charges. And contrary to the Defendant's argument, Section 951 is a clear and easily intelligible statute. For those reasons, discussed herein, the Court should deny the Defendant's Motion to Dismiss.

## I.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a party to file a pretrial motion alleging a defect in the indictment, including a "failure to state an offense." "When grading an indictment's sufficiency," the court must look to see "whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *U.S. v. Guerrier,* 669 F.3d 1, 3 (1st Cir. 2011); *U.S. v. Cranney*, 2016 WL 1242529 at *3 (D. Mass. March 29, 2016). In doing so, the court must assume that the allegations contained within the indictment are true. *Guerrier,* at 3-4. An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment that tracks the language of the underlying statute is generally sufficient to meet this standard, so long as it is accompanied with "such a statement of the facts and circumstances as will inform the accused of the specific offense." *U.S. v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010); *Cranney*, 2016 WL 1242529 at *3. Whether an indictment is sufficient does not mean looking at "whether, in hindsight, the indictment or information could have been more complete… but rather whether it fairly identifies and describes the offense." *Cranney*, 2016 WL 124529 at *3 (citing *U.S. v. Allard*, 864 F.2d 248, 250 (1st Cir. 1989)).

2

## II.    Argument

### a. The Indictment Sufficiently Alleges that Liang Engaged in a Conspiracy to Violate 18 U.S.C. § 951.

The Indictment sufficiently alleges that the Defendant violated 18 U.S.C. § 371. Section 371 provides for criminal penalties where "two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy." The Indictment states:

> From at least in or around 2018 until at least 2022, in the District of Massachusetts and elsewhere, the defendant,
>
> LITANG LIANG,
>
> knowingly and intentionally conspired with others, known and unknown to the Grand Jury, to commit an offense against the United States, to wit, Acting as an Agent of a Foreign Government, that is, to knowingly act and cause others to act in the United States as an agent of a foreign government, namely, the People's Republic of China, without prior notification to the United States Attorney General, in violation of 18 U.S.C. § 951.

Indictment, ¶ 39. In other words, it alleges that "two or more persons conspire[d]… to commit an[] offense against the United States" and that one or more of such persons did an act to effect the object of the conspiracy (here, that the Defendant did "knowingly act and cause others to act in the United States as an agent of a foreign government, namely, the People's Republic of China, without prior notification to the United States Attorney General").

The Indictment also details facts about both the agreement and the Defendant's acts to effect the object of the conspiracy. For example, the Indictment alleges that in October and November 2018, the Defendant met or communicated with several PRC government officials

responsible for PRC policies involving Taiwan; that he then met with PRC government officials responsible for the same policies in Boston in December 2018; and that he informed one of those government officials shortly afterwards that he had identified the "core team" for a Taiwan reunification organization, and that the organization would soon be ready to operate. Indictment, ¶¶ 5-9. In other words, the Indictment alleges that the Defendant conspired with PRC government officials to act in the United States at their direction or control by setting up the reunification organization. The Indictment then alleges that the Defendant took an overt act to effect that conspiracy by actually setting up the organization, and by undertaking numerous acts on behalf of that organization, many of which he reported back to the PRC government. Indictment, ¶¶ 10-11, 27-28. This series of events is just one of many examples throughout the Indictment that clearly allege that the Defendant conspired with others to act and to cause others to act in the United States as an agent of the PRC government.

The Defendant's primary argument to dismiss the conspiracy count is that the Indictment fails to allege that the Defendant "entered into an agreement to act as an agent of the PRC, *with the explicit, agreed upon intention of doing so without notifying the United States Attorney General*." Def. Mot., p. 7. To the extent the Defendant argues that the Indictment needs to allege knowledge of the Section 951 notification requirement and an explicit agreement to violate it, he is incorrect. 18 U.S.C. § 951 is a general intent crime, and "knowledge of the notification requirement need not be proven by the government." *U.S. v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010); *U.S. v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005). The Defendant cites no authority to the contrary. And, as the Supreme Court has held, a conspiracy charge cannot require a higher *mens rea* than the underlying offense. *U.S. v. Feola*, 420 U.S. 671, 686-87 (1975). In *Feola*, the Defendant argued that while the government did *not* need to prove that he was "aware of the

4

official identity of his assaulted victims in order to find him guilty of assaulting federal officers, in violation of 18 U.S.C. § 111, the Government nonetheless must show that he was aware that his intended victims were undercover agents, if it is successfully to prosecute him for conspiring to assault federal agents." *Id*. In other words, as the Defendant does here, the respondent urged the court to adopt "the proposition that the Government must show a degree of criminal intent in the conspiracy count greater than is necessary to convict for the substantive offense." *Id*. at 686. The Supreme Court rejected that view, finding that Section 371

> offers no textual support for the proposition that to be guilty of conspiracy a defendant must have known that his conduct violated federal law… [S]ince one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engaged in the prohibited conduct. Then where, as here, the substantive statute does not require that an assailant know the official status of his victim, there is nothing on the face of the conspiracy statute that would seem to require that those agreeing to the assault have a greater degree of knowledge.

*Id*. at 687. *See also U.S. v. Collazo,* 984 F.3d 1308, 1332 (9th Cir. 2021) (finding that conviction for conspiracy to distribute controlled substances, the defendant must have the same mental state as the underlying offense, and therefore the government "need not prove the defendant's knowledge of the drug type and quantity" under 21 U.S.C. § 841(b)); *U.S. v. Allen*, 788 F.3d 61, 70 (2d Cir. 2015) (where underlying statute does not require defendant to have known that the lands he intended to burn were federally owned, conspiracy offense requires no greater *mens rea*). So, too, it is with this case. Given that knowledge of the notification requirement is *not an element* of Section 951, no explicit agreement to violate the notification requirement is necessary. Otherwise, Section 371 would require a higher *mens rea* than Section 951. All that is required is an agreement wherein at least one coconspirator acts as an agent of a foreign

government inside the United States – which Indictment paragraph 39 alone satisfies. But there does not need to be an agreement regarding, or knowledge of, the notification requirement.

Even if it *were* necessary that the Indictment allege an agreement to refrain from notifying the Attorney General, the facts outlined in the Indictment make clear that the Defendant and his co-conspirators agreed that the Defendant's actions on behalf of the PRC government would be covert. For example, among the manner and means alleged by which the Defendant carried out the conspiracy is that he "[e]stablish[ed] NEAPUC in order to appear to be acting as a member of a local community organization unconnected to the PRC government, when in fact he was acting at the direction or control of the PRC government." *Id.*, ¶ 36. The Indictment also alleges that the Defendant was wary about having his activities too widely known, when he stated that "[b]y doing this type of job, you must be super careful about what to do and what to say in public, especially on those sensitive topics." *Id.*, ¶ 22. As a result, regardless of whether such an allegation is required, the Indictment makes clear that the Defendant and his co-conspirators agreed to act covertly and, therefore, not to notify the U.S. Attorney General. *See Rafiekian,* 991 F.3d at 545 ("Savvy operatives cover their tracks").

For all of these reasons, the Indictment sufficiently alleges that the Defendant violated 18 U.S.C. § 371.

### b.   The Indictment Sufficiently Alleges that Liang Violated 18 U.S.C. § 951.

The Indictment also sufficiently alleges that the Defendant violated 18 U.S.C. § 951. Section 951 provides for criminal penalties for any person "other than a diplomatic or consular

officer or attaché, [who] acts in the United States as an agent of a foreign government without

prior notification to the Attorney General."[1] The Indictment states:

> From at least in or around 2018 until at least 2022, in the District
> of Massachusetts and elsewhere, the defendant,
>
> LITANG LIANG,
>
> knowingly acted and caused others to act in the United States as an
> agent of a foreign government, namely, the People's Republic of
> China, without providing prior notification to the United States
> Attorney General, as required by law.

Indictment, ¶ 39. In order to show that the defendant "acted" within the United States under

Section 951, the government need only show that the defendant took acts "of some kind" on

behalf of a foreign government, and those acts need not be criminal or even wrongful. *See*

*Duran*, 596 F.3d at 1293-95 ("the activities that fall within § 951's purview have never been

expressly or by judicial interpretation limited to those bearing upon national security or even

those which by their nature are criminal or inherently wrongful;" Congress clearly intended §

951 to be a "catch-all statute that would cover all conduct taken on behalf of a foreign

government;" and Section 951 reaches "*any* affirmative conduct undertaken as an agent of a

foreign government"); *U.S. v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) (affirming conviction

where the evidence showed that the defendant received money from a foreign intelligence

---

[1] Section 951 also defines "agent of a foreign government" as an "individual who agrees to
operate within the United States subject to the direction or control of a foreign government
official, except that such term does not include – (1) a duly accredited diplomatic or consular
officer of a foreign government, who is so recognized by the Department of State; (2) any
officially and publicly acknowledged and sponsored official or representative of a foreign
government; (3) any officially and publicly acknowledged and sponsored member of the staff of,
or employee of, an officer, official, or representative described in paragraph (1) or (2), who is not
a United States citizen; or (4) any person engaged in a legal commercial transaction."

service and made calls to the foreign intelligence service, holding that the "jury did not have to find that" the defendant "actually spied" on opposition members in the United States).

Further, the degree of direction or control exercised by the foreign government need not be absolute. To be sure, "a person does not become an 'agent' for purposes of § 951 simply by acting in accordance with foreign interests or by privately pledging allegiance. Nonetheless, a foreign principal's involvement does not need to mirror an employer's control over the workings of an employee; a lesser degree of 'direction' is sufficient, as it would be under the common law." *U.S. v. Rafiekian*, 991 F.3d 529, 540-41 (4th Cir. 2021) (citations omitted). In other words, "an independent contractor may also be an agent – while still retaining significant direction over the particulars of the performance," such that a person may violate Section 951 by agreeing to operate subject to a "more hands-off form of 'direction.'" *Id.*

The Indictment contains a myriad of allegations that the Defendant acted at the direction or control of PRC government officials. Among other things:

- PRC OFFICIAL 1 asked the Defendant to provide the name of a specific individual who worked for a local government official and who had attended a specific event in Boston. The Defendant supplied that name. Indictment, ¶ 4.

- PRC OFFICIAL 1 requested that the Defendant provide information about Organization A, a local Chinese community organization with pro-Taiwan leanings. The Defendant and PRC OFFICIAL 1 then had a 15 minute telephone conversation later that day. *Id.*

- PRC OFFICIAL 1 had a phone conversation with the Defendant, and several days later, the Defendant provided PRC OFFICIAL 1 with a list of members of Organization B, a local Chinese organization with pro-Taiwan leanings. *Id.*

- After numerous meetings over several months with PRC government officials responsible for the PRC's Taiwan policy, both in the PRC and in Boston, the Defendant established NEAPUC (an organization that support reunification of Taiwan with the PRC), and repeatedly reported on NEAPUC's activities to those PRC government officials. *Id.*, ¶¶ 5-11.

- After repeated communications with PRC OFFICIAL 5, the Defendant organized a counter-protest against pro-democracy protesters in Boston. The Defendant later stated that he had been tasked on the afternoon of August 17, 2019, with building that counter-protest (the same day he had numerous communications with PRC OFFICIAL 5), while also sending at least one photograph of the dissidents to PRC government officials. *Id*., ¶¶ 12-22.

- The Defendant informed PRC OFFICIAL 5 that a "peaceful unification conference" which he had recently attended had been "very successful" and clarified his "direction of work." *Id*., ¶ 26.

- PRC OFFICIAL 7, who worked for the PRC's Ministry of Public Security, directed the Defendant to provide him with the names of two "vice presidents" within the overseas Chinese community. The Defendant provided PRC OFFICIAL 7 with those names, and informed PRC OFFICIAL 7 that they were "the best candidates for PRC OFFICIAL 7 to cultivate and train." *Id.*, ¶ 32.

These allegations, among the many others in the indictment, are more than sufficient.

Despite these allegations, the Defendant lays out "six factors which may be considered in determining whether an individual is an 'agent' of a foreign government," Def. Mot. at 9, and claims that these factors are relevant to a discussion of Section 951. But the Defendant is conflating two wholly different statutes. The six factors identified by the Defendant are contained within Department of Justice ("DOJ") guidance relating to the "request" prong of the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611, et seq. FARA is an entirely different statute than Section 951 and contains different elements. For example, FARA makes it unlawful to act as "an agent of a foreign principal," not a foreign *government or official* as is required under Section 951, without having made a "true and complete registration statement" to the Attorney General. 22 U.S.C. § 612(a). Furthermore, FARA contains a higher *mens rea* requirement – that of "willfulness". 22 U.S.C. § 618(a)(1); *Duran*, 596 F.3d at 1292. In other words, a person must know that they are engaging in unlawful conduct, *see Bryan v. U.S.*, 524 U.S. 184, 195-96 (1998), unlike with Section 951. What is more, FARA Unit guidance and

advisory opinions like the opinion cited by the Defendant have no precedential value, even in the context of FARA. *See* 28 C.F.R. § 5.2(b) ("Review requests must be submitted by a party to the transaction or the party's attorney, and have no application to a party that does not join in the request."); FARA Unit, "Advisory Opinions," https://www.justice.gov/nsd-fara/advisory-opinions ("Nothing in these letters is intended to create any substantive or procedural rights, privileges, or benefits enforceable in any administrative, civil, or criminal matter.") (*citing United States v. Caceres*, 440 U.S. 741 (1979)).

As stated, Section 951 requires allegations sufficient to prove that Defendant acted under the "direction or control" of a foreign government or official – a standard that the Indictment easily meets, for the reasons explained above. The arguments raised by the Defendant – that he was not "specifically identified and requested to act" by the PRC, that he was not "compensated or coerced" by the PRC, and that he was not "obligated" or "required" to act on behalf of the PRC – have no basis in Section 951. *See* Def. Mot. pp. 10, 12. They are simply strawmen. As a result, the court should not utilize non-binding guidance about FARA when analyzing a Motion to Dismiss an indictment under Section 951.

In short, as described above and alleged in the Indictment, the Defendant was not merely acting in parallel with PRC interests and pursuing a mutual goal. He repeatedly acted at the direction or control of numerous PRC government officials, and repeatedly reported back to them about his actions. The Indictment therefore sufficiently alleges that the Defendant violated 18 U.S.C. § 951.

### c.  The Indictment Does Not Violate the First Amendment.

The Defendant also contends that the Indictment violated his "constitutional rights to free speech and free association." Def. Mot. at 12-14. More specifically, the Defendant asserts that

he "was targeted for a political prosecution under FARA," and claims that he was charged for merely "communicating… with alleged PRC officials…" *Id.* at 15. These arguments misunderstand the facts and the law.[2]

To begin, the Defendant was charged with conspiring to act and acting as a foreign agent in violation of Section 951. As various courts have recognized, Section 951 regulates conduct—that is, *acting* as a foreign agent—not speech. *See Duran*, 596 F.3d at 1292 ("Section 951 proscribes acting as an agent of a foreign government without first notifying the Attorney General"); *U.S. v. Michel*, 2022 WL 4182342 at *5 (D.D.C. Sept. 13, 2022) (holding that Section 951 "regulate[s], and regulate[s] only, notification to the Attorney General upon being retained as an agent of a foreign principal"). Thus, contrary to his claims, the Defendant is not charged for engaging in any First Amendment protected activity and this challenge should be denied. *See U.S. v. Michel*, 2022 WL 4182342 at *5 (D.D.C. Sept. 13, 2022) ("Because, strictly speaking, FARA and section 951 do not penalize *speech*, but rather the lack of registration, any facial challenge under the First Amendment fails. Furthermore, because the *actus reus* here is failure to notify the Attorney General before undertaking an illicit scheme… an as-applied challenge fails as well." (emphasis in original)).

To the extent the Indictment relates to the Defendant's speech at all, it does so only incidentally. As the Supreme Court has recognized, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968); *see also Welch v. U.S.*, 750 F.2d 1101,

---

[2] While the Motion is not entirely clear on this point, the Defendant appears to raise an as-applied First Amendment challenge. *See, e.g.*, Def. Mot. at 19 (challenging Section 951 on First Amendment grounds "as applied by the government in Mr. Liang's case").

1109-10 (1st Cir. 1985) (citing *O'Brien*).  In such circumstances, "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than essential to the furtherance of that interest."  *Id.* at 377.[3]

Here, the charges in the Indictment – and Section 951 generally – further compelling national security interests: namely, to prevent foreign agents from unlawfully operating in the United States at the direction or control of the PRC Government.  As other courts have explained, Section 951 "'prevents covert influence over U.S. policy by foreign principals' by requiring domestic agents to inform the Attorney General, and thereby the public, 'of the true source or sponsor behind the information being disseminated for its consideration.'"  *U.S. v. Michel*, 2022 WL 4182342 at *5 (D.D.C. Sept. 13, 2022) (quoting *U.S. v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019)).  These interests are compelling and easily satisfy the requirement for an "important or substantial governmental interest." *See, e.g.*, *U.S. v. Schulte*, 436 F.  Supp. 3d 747, 751 (S.D.N.Y. 2020) ("There is no doubt the Government's interest in national security is compelling."); *Haig v. Agee*, 453 U.S. 280, 305 (1981) ("[T]he objective of safeguarding our national security is 'obvious and unarguable.'" (internal citation omitted)).  Indeed, "no governmental interest is more compelling than the security of the Nation."  *U.S. v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (quoting *Agee*, 453 U.S. at 307).  Moreover, the incidental restriction on

---

[3] Nor is Section 951 a content- or speaker-based regulation of speech that warrants any heightened scrutiny beyond that set forth in *O'Brien*.  Section 951 does not favor or disfavor the substance of any speech by an agent of a foreign government, nor does it discriminate against agents of a foreign government vis-à-vis non-agents regarding the substance of their speech.  Rather, Section 951 proscribes conduct absent notice, not the underlying substance of that conduct.

speech – insofar as any such a restriction occurred in this case – is exceedingly modest, as all that was required was for the Defendant to notify the Attorney General that he intended to act as a foreign agent of the PRC Government.  If this is any kind of restriction at all, it is *de minimis*. Thus, this prosecution readily meets the standard set forth in *O'Brien*.

The Defendant also wrongly claims that he was charged for merely "communicating… with alleged PRC officials…."  Def. Mot. at 15.  As an initial matter, the fact that allegations in the Indictment reference the Defendant's repeated telephone calls with PRC Government officials does not raise a First Amendment issue. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now."); *see also United States v. Gagliardi*, 506 F.3d 140, 148 (2nd Cir. 2007) (describing as "unremarkable" its holding that "[s]peech is not protected by the First Amendment when it is the very vehicle of the crime itself.").

Moreover, the allegations in the Indictment referring to the Defendant's completed and attempted telephone calls with the PRC Government, *see, e.g.*, Indictment, ¶¶ 4(f)-(g), 14(d), 14(f), 14(j)-(k), 17-19, 31, are highly relevant to an element of the Section 951 charge, specifically, the agency relationship between the Defendant and the PRC Government. The Seventh Circuit previously rejected a similar line of argument in *Dumeisi*, 424 F.3d at 579. There, the court affirmed the district court's decision rejecting a proposed jury instruction that would have read: "It is not a violation of 18 U.S.C. § 951 to publish a news article."  Instead, the court instructed the jury that the defendant's speech, publications, opinions, and political views could be considered "insofar as they may pertain to issues of motive and intent." *Id.* ("Given that an element of § 951 is acting 'subject to the direction or control of a foreign government or official,' … and

there was evidence suggesting that [the defendant] published certain articles at the behest of the [Iraqi government], we find this publication relevant and agree with the district court that [defendant's] proposed instruction would have been 'misleading as to the law.'").  Here, too, the Defendant's telephone calls with the PRC Government are relevant to the Section 951 charge not because the speech itself is proscribed by the statute, but because they are evidence of an agency relationship between the Defendant and the PRC Government.

Accordingly, because Section 951 and this prosecution further compelling national security interests and do not impose a burden on speech, and because the Defendant's frequent contact with the PRC Government is relevant to establishing his agency relationship with the same, the Defendant's First Amendment challenge to the Indictment must fail.

### d.  18 U.S.C. § 951 Is Constitutional.

Finally, the Defendant's Motion contends that Section 951, as applied to the Defendant, "is unconstitutionally vague."  Def. Mot. at 16.  The crux of the argument appears to focus on the phrase "agent of a foreign government."  *Id.* at 16 (discussing definition of phrase), 19 (asserting Section 951 does not define the class of individuals – i.e., foreign agents in the United States – who are required to provide notice).  For support, the Defendant cites caselaw, *id.* at 17 (citing *Smith v. Goguen*, 415 U.S. 566 (1974)), that predates and was mooted by an amendment to the statute in 1984 that added a definition for the statutory phrase "agent of a foreign government," *see* PL 98-473 at § 1209, Oct. 12, 1984, 98 Stat. 1837. Without explaining why or how, the Defendant argues that this statutory definition "still invites arbitrary enforcement," as evidenced by guidance issued by the Department of Justice.  Def. Mot. at 17. But, as described above, the guidance referenced in the Motion relates to a different statute: FARA.  Whatever the import of that guidance in the context of FARA, it is immaterial here.

14

More to the point, various courts have upheld Section 951 against constitutional challenges for vagueness, and every court to have considered a vagueness challenge to Section 951 has rejected it. *See Duran*, 596 F.3d at 1295 ("Section 951 is not unconstitutionally vague as applied to Duran."); *U.S. v. Truong Dinh Hung*, 629 F.2d 908, 920 (4th Cir. 1980) (rejecting a vagueness challenge to Section 951 that focused on the term "agent," which was undefined at the time); *Michel*, 2022 WL 4182342 at *5 (rejecting vagueness challenge to Section 951 because it "plainly and concretely identifies the conduct which constitutes its violation, and the statute's language is clear and unambiguous." (internal quotations omitted)); *U.S. v. Alshahhi*, 2022 WL 2239624 at *10-11 (E.D.N.Y. June 22, 2022) (rejecting as premature an as-applied vagueness challenge because "[i]n general, a defendant 'must wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in.'"). The Court should reach the same conclusion here and reject the Defendant's vagueness challenge.

Finally, the Defendant argues that Section 951 is vague because subpart (b) of the statute requires the Attorney General to promulgate rules and regulations "establishing requirements for notification." According to the Defendants, Section 951 is unconstitutionally vague because "[t]he attorney general's rules are not cited or included in the statute." Def. Mot. at 19. The Defendant fails to cite any precedent in support of this argument. Setting aside this argument's lack of legal support, the argument fails for another reason: the Department of Justice in fact issued regulations relating to Section 951 and, specifically, the statute's notification requirement, in 1989. *See* Order No. 1373-89, 54 Fed. Reg. 46608-01 (Nov. 6, 1989). In relevant part, these regulations define the term "agent" in Section 951 as "all individuals acting as representatives of, or on behalf of, a foreign government or official, who are subject to the direction or control of

that foreign government or official, and who are not specifically excluded by the terms of the Act or the regulations thereunder." 28 C.F.R. § 73.1(a). Thus, consistent with the definition set forth at Section 951(d), the notification requirement applies to anyone who *agrees to operate in the United States subject to the direction and control of a foreign government or official*, unless the individual comes within an enumerated statutory exception.

### III.    Conclusion.

Over the course of several years, the Defendant conspired to act and did act in the United States as an agent of the PRC government. He was charged under Section 951 (a clear and intelligible statute) not for his speech but for his conduct: he reported to the PRC government on local organizations, photographed dissidents, organized pro-PRC counter-protests, and provided the names of potential recruits to MPS. He did so at the direction or control of PRC government officials. All of this is alleged in the Indictment, which is a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

For the reasons stated above, the Defendant's Motion to Dismiss should be denied.


Dated: May 21, 2024                                        Respectfully submitted,

                                                           JOSHUA S. LEVY
                                                           Acting United States Attorney

                                            By:    */s/ Timothy H. Kistner*
                                                   Timothy H. Kistner
                                                   Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Timothy H. Kistner
Timothy H. Kistner
Assistant U.S. Attorney