UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | *   Criminal Action No. 1:23-cr-10130-IT |
| LITANG LIANG, | * |
| | * |
| Defendant. | * |

ORDER ON MOTIONS IN LIMINE

January 14, 2025

TALWANI, D.J.

The government seeks an order prohibiting counsel from arguing to the jury that the conduct alleged in the indictment is protected by the First Amendment. Gov't Mot. in Limine [Doc. No. 70]. Defendant Litang Liang seeks to exclude the government's proposed expert witness. Def.'s Mot. in Limine [Doc. No. 73]. For the reasons set forth below, the government's Motion in Limine [Doc. No. 70] is GRANTED and Liang's Motion in Limine [Doc. No. 73] is GRANTED in part and DENIED in part.

I.  Background

The government has charged Defendant Litang Liang with acting as an agent of a foreign government without notice to the Attorney General, in violation of 18 U.S.C. § 951, and conspiracy to do so, in violation of 18 U.S.C. § 371. Indictment [Doc. No. 1]. The Indictment [Doc. No. 1] alleges that Liang acted as an agent of the People's Republic of China ("PRC") when he provided information about individuals and organizations in the Boston area to officials and entities affiliated with the PRC government and coordinated with some of those officials to establish an organization in Boston that provided support for the PRC's surveillance efforts and its promotion of reunification of Hong Kong and Taiwan with the PRC. Id. ¶¶ 4–33. Liang moved to dismiss these charges, arguing that the First Amendment protected Liang from

prosecution under § 951. See Mem. ISO Mot. to Dismiss 12, 16 [Doc. No. 59]. In denying Liang's motion to dismiss, the court found that Liang's First Amendment challenge to § 951 failed, where the charges turn on whether Liang was acting as an agent of the foreign government without the required notice. Mem. & Order 15–17 [Doc. No. 65].

## II. The Government's Motion in Limine to Prohibit Counsel from Arguing to the Jury that the Alleged Conduct is Protected by the First Amendment

The government argues in its Motion in Limine that whether the First Amendment protects Liang's conduct is a legal issue that the court has decided and that arguments to the jury "relating to the First Amendment . . . will serve only to confuse the jury." Gov't Mot. in Limine 1 [Doc. No. 70]. Liang responds that he does not intend to argue to the jury that the First Amendment protects him from being convicted under 18 U.S.C. § 951. Def.'s Opp'n 2 [Doc. No. 86]. However, he does intend to argue that his support and advocacy for unification of Hong Kong and Taiwan with the PRC are, without proof of direction from PRC government officials, beliefs and activism that are protected by the First Amendment. See id. Liang contends that his argument will mitigate juror biases that may arise when the government presents evidence of Liang's activism and participation in political discussions. Id.

Counsel's proposed arguments to the jury that Liang's conduct is subject to First Amendment protection are likely to confuse the jury. To establish that Liang was an unregistered agent of the PRC government or its officials, the United States must prove, beyond a reasonable doubt, that Liang's conduct was "subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d). As the Seventh Circuit has explained, "§ 951's concern is with the agent-principal relationship, and it sweeps into its ambit all 'acts,' so long as they take place on U.S. soil and at the direction or control of the foreign government." United States v. Chaoqun, 107 F.4th 715, 728 (7th Cir. 2024). Therefore, Liang's assertion that the jury must determine

2

whether Liang was "exercising his constitutional rights" or "acting under the direction or control of foreign government or official without notifying the Attorney General," see Def.'s Opp'n 2 [Doc. No. 86], suggests a false choice. A jury must convict Liang under § 951 regardless of whether the First Amendment would otherwise protect his speech or conduct if it finds, beyond a reasonable doubt, that he engaged in the charged conduct subject to the direction or control of PRC government officials and without notice to the Attorney General. And the jury must acquit Liang if it has reasonable doubt that Liang acted subject to the direction or control of PRC officials without notifying the Attorney General regardless of whether the First Amendment protects his speech or conduct. Therefore, arguments related to the First Amendment are not focused on the factual issues that the jury must decide. Additionally, the court has already determined that the First Amendment does not provide a legal defense to the conduct charged. Counsel's proposed arguments are thus likely to confuse the jury.

Liang's further concerns as to possible bias relating to his support for the unification of the PRC may be raised in requests regarding the preliminary or final instructions the court gives to the jury.

### III.    Defendant Liang's Motion in Limine to Exclude Expert Testimony

The government has disclosed as an expert witness Dr. Glenn Tiffert, who the government says is "[a] specialist on the political and legal history of the [PRC]." Gov't Opp'n 2 [Doc. No. 82]. The government seeks to have Dr. Tiffert offer an expert opinion on

> (1) the rise of the domestic security state in China following the creation of the PRC, including the relationship between the PRC government and the [Chinese Communist Party ("CCP")], as well as the relationship between those entities, on the one hand, and Taiwan and Hong Kong, on the other; (2) the modern domestic security apparatus in the PRC, including, specifically, the role played by the Ministry of Public Security ("MPS"); (3) the historical and current focus of the PRC government and the CCP on surveilling, controlling and policing the political views and actions of the Chinese diaspora, including individuals of Chinese descent who reside in the United States; (4) background on specific

3

> components of the PRC Government and the CCP, including the United Front Work Department ("UFWD") and its subsidiaries such as the China Council for the Promotion of Peaceful National Reunification ("CCPPNR"); (5) the interrelationship between the MPS, the UFWD, and the PRC consulates and consular officers in the United States; and (6) the meaning, context, and significance of certain trial evidence, including, inter alia, a belt worn by the Defendant that features an MPS seal, a lanyard from a CCPPNR conference attended by the Defendant, and photographs of the Defendant in his MPS uniform.

Gov't Opp'n 3 [Doc. No. 82]. The government also anticipates having Dr. Tiffert testify that organizations that Liang met with when he traveled to China—the UFWD and Taiwan Affairs Office—are charged with gathering information on people in the United States who advocate adverse positions to PRC government interests and managing the PRC government's unification efforts. Id. at 4–5.

Defendant contends that this testimony should be excluded as inadmissible because it is not "based on sufficient facts or data" and is not "the product of reliable principles and methods." Def.'s Mot. in Limine 3 [Doc. No. 73]. Additionally, Defendant argues that the testimony will not help the jury "determine a fact in issue" because "[t]he history of the Chinese communist party and its foreign policy have nothing to do" with whether he was acting as an agent of a foreign nation without notifying the Attorney General. Id. at 2. Finally, Defendant asserts that the expected expert testimony is unfairly prejudicial because it "will infect the trial with anti-China sentiment." Id.

The government responds that Dr. Tiffert is qualified to serve as an expert as a specialist on the political and legal history of the PRC and that this testimony will help the jury understand that the officials with whom Liang is alleged to have coordinated are affiliated with entities that are "components of or acting as intermediaries for the PRC government . . . ." Gov't Opp'n 2–4 [Doc. No. 82]. The government contends that Dr. Tiffert's testimony "will provide critical context to help the jury understand" that obtaining information on "Chinese-American activists

4

living and working in or around Boston . . . is a historical and current priority of the PRC Government." Id. at 4.

    A.    *Standard of Review*

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. A witness "qualified as an expert by knowledge, skill, experience, training or education" may offer opinion testimony only if:

> the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Id.

Courts have a "gatekeeping role" to ensure that the expert testimony a party offers satisfies Rule 702's criteria. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). "[T]he proponent of the expert testimony must establish these reliability requirements by a preponderance of the evidence[.]" Doucette v. Jacobs, 106 F.4th 156, 169 n.17 (1st Cir. 2024).

Further, a court "assessing a proffer of expert . . . testimony under Rule 702 should also be mindful of other applicable rules," including Federal Rule of Evidence 403. Daubert, 509 U.S. at 595. The court may exclude evidence that is admissible under Rule 702 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Id. (alteration in original). "[I]n weighing possible prejudice against probative force under Rule 403 . . . [the court] exercises more control over experts" than lay witnesses. Id. (internal quotations omitted).

B.   *Dr. Tiffert is Qualified as An Expert.*

As evidenced by his CV, Dr. Tiffert, a Distinguished Research Fellow at the Hoover Institution at Stanford University with a Ph.D. from the University of California, Berkely, "is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Defendant does not argue otherwise.

C.   *Defendant May Voir Dire Dr. Tiffert at Trial as to Whether His Anticipated Testimony is Based on Sufficient Facts or Data and is the Product of Reliable Principles and Methods.*

A witness's publications on the topics of the proposed testimony can demonstrate that the witness's proffered testimony on those subjects is reliable. See Daubert, 509 U.S. at 593–94. Dr. Tiffert has authored several peer-reviewed publications on developments in law, policy, and politics in the PRC. He has also led projects at the Hoover Institution related to the PRC's international policy prerogatives. His body of work demonstrates that his expected testimony on those topics is likely to be reliable. Further, the government has offered Dr. Tiffert's testimony on matters that are largely factual and verifiable—i.e. the relationship between various entities, historical developments in PRC governance, and the meaning of various symbols. See Daubert, 509 U.S. at 593 (explaining that "a key question" in assessing whether expert testimony is based on valid foundation is "whether it can be (and has been) tested").

Nonetheless, at trial, before soliciting expert testimony from Dr. Tiffert, the government's counsel shall inquire as to the facts or data and principles and methods that support his anticipated expert opinion in this case before moving to have the court qualify him as an expert. Defense counsel may then voir dire the witness as to these matters prior to the court making a final decision qualifying him as an expert as to each of the matters on which the government seeks his testimony.

D.  *The Anticipated Testimony is Relevant.*

Dr. Tiffert's anticipated testimony will also help the jury determine a critical fact in issue: whether Liang acted subject to the direction or control of the PRC government or its officials. Evidence is relevant if "it has any tendency to make a fact" that bears on the outcome of the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Determining whether Liang acted subject to the PRC government's direction requires understanding whether and how the PRC government is connected with various individuals and entities with whom Liang purportedly met. The indictment alleges that Liang coordinated with and provided information to officials at the Ministry of Public Security ("MPS"), the PRC consulate in New York, and the United Front Work Department ("UFWD"). Indictment ¶¶ 2, 4–5 [Doc. No. 1]. The Indictment further alleges that the UFWD works to further the goals of the Chinese Communist Party ("CCP"). Id. at ¶ 5. Dr. Tiffert's anticipated testimony is probative of the relationship between these entities and the PRC government and the role that each plays in supporting PRC government initiatives. Therefore, his anticipated testimony, including the current focus of the PRC government on surveilling individuals of Chinese descent in the United States, is relevant to whether Liang's interactions with officials from those entities demonstrate that he was acting under the direction or control of the PRC government. Additionally, testimony regarding the PRC government's particular surveillance practices, which purportedly include instructing Chinese nationals living in the United States to obtain and report information to government officials, see Gov't Opp'n 4 [Doc. No. 82], is relevant to whether the PRC government instructed Liang to engage in that sort of conduct here.

Dr. Tiffert's expected testimony on the development of the PRC's security apparatus following establishment of the PRC is also of some relevance. That testimony purportedly will explain historical developments in the relationship between the PRC government and the CCP

and those entities' goals regarding unification with Taiwan and Hong Kong. Testimony regarding those relationships will provide the jury with context for the PRC's current relationship to the other entities at issue here and its unification goals. In turn, such testimony will likely be of some use to the jury in determining whether the PRC government instructed Liang to engage in activities to further those goals.

In sum, the court finds relevant the anticipated testimony explaining the surveillance undertaken by the PRC government, the historical and contemporary relationship between the PRC government and the various entities with which Liang was allegedly involved, and the contemporaneous significance of the symbols and insignia that the government seeks to introduce into evidence.

    E.    *Some of the Anticipated Testimony is Excluded as Unduly Prejudicial.*

Dr. Tiffert's proffered testimony on the PRC government's use of surveillance efforts for repressive purposes, however, is of at most limited relevance. At the same time, it also poses a significant danger of unfair prejudice, namely "infect[ing] the trial with anti-China sentiment . . . ." See Def.'s Mot. in Limine 2 [Doc. No. 73]. Accordingly, testimony concerning the PRC government's use of surveillance for repression or attempts at repression is excluded under Rule 403.

## IV.    Conclusion

For the foregoing reasons, the government's Motion in Limine [Doc. No. 70] to exclude arguments relating to the First Amendment is GRANTED and Liang's Motion in Limine [Doc. No. 73] is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

January 14, 2025                              /s/Indira Talwani
                                                    United States District Judge